14-1776. v. Magnetar Technologies Corp. v. Six Flags Theme Parks, and others. Mr. Hastini. Thank you, Your Honor. Good morning, Your Honor. This may have pleased the court. I am Joe Hastini. I'm here on behalf of Magnetar Technologies and G&T Conveyor, the two plaintiffs in the court below. We have a number of summary judgment issues. The thing that unites all of them, in my mind, is that in every case there is substantial evidence favoring the plaintiff's positions from which a jury, when that evidence is taken in the light, most favorable to the plaintiffs, and which a jury can find in favor of the plaintiffs on all of the issues with respect to each of the two patents in the case. The first patent is Claim 3. There's only one claim with a 1-2-5 patent, and that's the claim that says you have a car, in this case a roller coaster car, with wheels. Mr. Hastini, why isn't the case affirmable simply for incorrect inventorship? You have Mr. Chung, or Dr. Chung, who obviously contributed something. The only living inventor testified that Mr. Chung was the inventor, was a co-inventor, because of the double-sided motor. There's a provision in the statute that you know very well that can be availed of to correct inventorship. It wasn't taken advantage of. So why doesn't that settle the issue? Respectfully, Your Honor, I disagree. Mr. Chung said that what he provided, facing staters, which I know the rule about all the claims of a patent with incorrect inventorship, but you do have to keep in mind that facing staters are in Claim 1, not Claim 3. The defendants, for some reason, changed their position on appeal and said Mr. Chung is now an inventor of all the claims. It doesn't matter, though. No, I understand. If you're an inventor of one claim, the whole patent goes, right? I understand, except it seems to matter to the defendants. But here's my point. Mr. Chung said, I came up with facing staters. I don't claim I'm the inventor of it. It's in the books. It's old. The patent examiner, in his examination of Claim 10, which issued as Claim 3, said facing staters are old. The applicant did not disagree. It amended the claims. But as we know, most components of a machine are old. It's putting them together. Correct. And the Hess case says that one can use the services, the aid, and the ideas of another. And that stems from the O'Reilly Supreme Court case, I think, and the case involving Samuel Morris on telegraphy, to the effect that it doesn't matter what the source of the information is if it is prior art. It doesn't matter whether it comes from a person or it comes from a book. How does this jive with your obviousness argument? I mean, your argument is that this is a combination of known elements, but it's the combination that's not obvious. Isn't anyone who suggested any portion of the combination an inventor in those circumstances? No. I don't think that's the law. I think if a person proposes the use of prior art, as Mr. Hess did to the inventors of the catheter in that case, then he suggested prior art and the court decided that he was not an inventor, relying on other precedents. Mr. Chong said he's not an inventor. I agree that Mr. Stays said, yeah, he had a great idea and we used it. But Mr. Stays had an opinion that that was a great idea. Mr. Stays is not the judge of what is inventive and who is an inventor and who is not. And in any event, and then the defendants rely on the fact that Chong stuck his neck out, and that's what Judge Stein relied on as well. To which I say, so what? Hess stuck his neck out. What about the on-sale bar? There was a deal here with United. It was partially implemented and money was passed. Okay. So why wasn't the court correct regarding invalidity for being on sale? Design. That's why. The word design means to plan and make decisions about, to create plans that show how something will be made, to make a plan or drawing to show the look, function, and working of a project before it is made. That is what the Engineering Services Agreement in August of 1991 was all about. Imagine a jury contrasting that Engineering Services Agreement, which says words like develop and design. Here's the words that pop up. Develop and design, conceptual design work, begin design, fluid, one million man hours, reasonable approximation of project cash flows, four configurations, active study, and missing elements. There was design going on here. I'll tell you when there was a sale. It was May of 1992. Under PATH, there's a difference between designing a system for a customer based on an already established concept and doing trial and error to see if the concept would actually work. It's not trial and error to see whether a concept would actually work when you have an Engineering Services Agreement for $250,000 that says, let's begin design, and during the course of that, you tell your customer, depending upon the configuration chosen, this system will cost you somewhere between $144 million and $195 million, and by the by, it will take us 1,049,000 man hours to design this system. There's two, you know, who's right and who's wrong. That's not what we're arguing here today. What we're arguing is what reasonable inferences could the jury draw from these documents, and the reasonable inference that the jury could draw from this pattern of conduct is that what happened in May of 1992 was a sale of a detailed, specified system, a product, for $195 million. What was going on in 1991 was a lot of back and forth about what this system, what this product might or might not include. All the cases that this defendant cites, Zachrin and the other cases, involve contracts where the design was established. People knew what it was going to be. Zachrin, the guy who had the fuse for the airdrop bomb, the design was established. He had a cost-plus contract. You don't have an established configuration here. You don't have an established design here. Just for example, this system had to be mounted from the floor, from the ceiling, not from the floor, because of the design loads involved at the terminal in Denver. You don't have an established... But the invention is not for the specific application in Denver. The invention that's ready for patenting is for a concept that you then adapt for the specific application. I respectfully disagree, Your Honor. I don't think you can sell a concept. I think you can sell a product. I think you can sell an apparatus, because that's what's claimed. What's claimed is not a concept. What's claimed is not a design. What's claimed is an apparatus. But you don't have to have the apparatus to silence the on-sale buck. And I'm saying that if you look at all the cases cited by both the parties here, there is not one case where you have a design that was so fluid, so incomplete, so speculative as you do here, and a jury could draw the conclusion that it was not on sale. For $250,000 for .17% of the prices being discussed in the later negotiations between the parties, I think a jury would say, yeah, there was a sale in May 1992, but was there clear and convincing evidence of a sale in August 1991? No, I think there is not. I don't think that's where they come out on that. The tracts issue I wanted to cover. I think we've covered it. You concede that there's an error in Claim 3, right? We did not. We never conceded error in Claim 3. That is a mistake by the district court, and it is a mistake by the defendants. Our argument in the district court started with, there's no error in Claim 3. Our argument was, and has always been, that the inventor, that the patent examiner, and that the defendants expert, Dr. Kirtley, all used the word tracts as a synonym for rails. Our argument is further that the inventor said, I understand what the claim means, and that's the test of Nautilus. The examiner understood what the claim meant. Mr. Kirtley understands what the claim means. They all use that terminology. We said there is no error in Claim 3. That is a false lead. So you're saying that they meant to use the phrase tracts, even though it's preceded by the word said, and tracts was never used previously in the claim. Well, it is used previously in the claim. It says that the preceding phrase of the claim is a tract having two parallel rails. That's part of the reason why I say if you read this claim in context, you understand what they're talking about, especially if you look at the figures and specifications, Figures 1 and 2. In other words, you're saying it reads a tract. We're saying that whether people skilled in the art, reading the phrase, opposed magnet assemblies mounted between said tracts, in the context of that claim, in their knowledge, know that that means between the rails. Let me address the point here. But that would be an error correction, not... No, it isn't. Look, a naval aviator refers to an airplane as an airplane. An Air Force aviator refers to an airplane as a ship. A naval aviator would tell you, that's crazy, but that's standard terminology in the Air Force. So your point is that it doesn't matter if they keep using them in the same claim. In other words, a naval aviator isn't going to come in and change his terminology midstream. I don't know what they're going to do. All I can say is, the persons of reasonable skill in the art reading this claim had no problem understanding what it meant. And we know that because they used tracts as an alternative term for rails. I think the examiner said a parallel tract configuration. Mr. Kirtley said... Where is his... Hold on a second here. Tracts, there we go. Mr. Kirtley referred to a prior art as having a pair of tracts and a car that rolled on tracts. What I'm saying is this, that a jury can reasonably draw the conclusion that persons of skill in the art understand the claim because persons of skill in the art use tracts as another term for rails. Would you go back to the first point before we interrupted you on the question of obviousness? On the question of obviousness, you've got Miller as the base reference. You combine it with either DEMACAI, which is a screen door with magnets, or you combine it with an older VAE, that's the predecessor to TNT technology, with flat magnets. Miller says, I want to do two things. I want to be able to slow and bring a car to a stop. And he uses a friction brake, the clamps, in order to do that. Dr. Kirtley said in the district court, well, anybody would know, doesn't give much reasoning, but he said anybody would know that you could take out the friction brake and substitute for it a contactless brake. That's what the invention is, contactless, because the pin and the magnets are never supposed to touch. The problem with that is magnetic brakes, and the defendant's testimony agrees, cannot stop a vehicle. They can only slow it, because the creation of the force depends upon relative motion. But is that a difference because of the way it's being used by these defendants, as compared with doing it on the level in an airport? I think it is, because if you take Miller and put in a contactless brake, Miller cannot both slow a car and stop a car. I read Miller as having two objectives, coupled by the conjunction and. He wants to have both of them. It's not or, it's and. That's the meaning. Slow a car, stop a car. If you put a contactless brake in Miller, you can't stop a car anymore. But I'm thinking that if, in fact, if you were to get to the question of infringement, you might find your claims construed in a sufficiently narrow way that this issue isn't raised. I suppose that's conceivable if we had, well, we've had our claims instruction, we're doing more claims instruction. In any case, I'd say you damage the goals of Miller when you take away its ability to stop a car. And the defendants on appeal come up with a new argument. They say, well, use both. Well, that's not what their expert says. Expert says substitute contactless for friction. The defendants now say on appeal, and I think that's waived, let's use them both. Why would anybody make that combination? What's the reasoning supporting the combination? There isn't any. And we do have a bit of evidence about secondary considerations. And Judge Stein thought we were talking about Claim 1. And she said, well, you said Chung's contribution was old. That's no good. So we're talking about Claim 3. And one of the CEOs for the defendants said the mega coaster comes about because of two things. One of them is magnetic brakes. He said, they're good. They're good. So I think that deals with the obviousness issue. Let's save the rest of your time for rebuttal. Mr. Lowery. Thank you, Your Honor. May it please the Court, Matt Lowery of Foley and Lardner, on behalf of the Defendant Appellees, which is about 18 or so amusement ride companies like Six Flags, Busch Gardens, amusement parks. I guess why don't I start with indefiniteness, which of course is a question of law, perhaps underlying facts. It's not entirely always clear to me, but certainly a question of law. I don't think the legal question of whether there's an error... Do you think that's your best invalidity argument? I would say that they're all solid for a variety of reasons. And I think Your Honor is correct. You only need one. And if there's one you'd like to hear first, I know Judge Lowery asked about inventorship first. I'm happy to address that. But don't we know what claim means? Between said tracks, there's only one track consisting, as the earlier portion of the claim says, having two parallel rails. So doesn't that mean between said rails? It could mean that. So it's not indefinite. It could also mean something else, Your Honor. It could also mean between wheels. That was a stretch, don't you think? I don't think so at all, for a couple of reasons, Your Honor. First of all... It's nowhere else in any of the claims. The other... The track and the rails are... No, the other claims recite rails specifically, but here's... They don't say between the wheels. No, but if you look in the specification on page 12 of our brief, there's a clip of the specification, and it talks about the importance of having them located between the wheels as opposed to the tracks, which is why either could be substituted and why, as Judge Fein noted in her opinion, the 30B6 representative of the plaintiffs admitted, yeah, it could be wheels. But of all the people and the experts and the inventors who testified, they said that when you say track, you mean rails. Not true, Your Honor. In fact, the only... It wasn't that lawyer-attorney argument that you can read it as wheels? Not at all, Your Honor. Professor Curley opined... Witnesses say so? I'm sorry? You had a witness who... Yes, Your Honor. The expert for the defendants said that it could be wheels or tracks and you can't tell, and the expert for the plaintiffs was silent. He said he couldn't tell the difference between wheels and rails? He opined that it was indefinite because it could be wheels or rails, and in fact, Judge Fein... This is a summary of judgment, right? Well, it is, but there was... This wasn't decided on summary of judgment? It is, Your Honor, but there was... There were no conflicting expert opinions? There was no conflicting expert opinion. Plaintiff's expert did not opine on this. This case is... I think you should move on to another topic. Okay. If I may, Your Honor, though, I would just note that this argument about substituting wheels or that the scope is different was not made below. On Appendix 11,095 is Judge Fein's opinion where he says plaintiffs do not contend, and so all of this is a new argument that we also believe this way. If we look, Your Honor, at inventorship, that also is a question of law, potentially, with underlying facts. Let's just say that it's decided that the inventorship was wrong. Why can't it just be corrected? They have... That's actually explained. They've waived that argument as well. We said it can't be corrected under Section 256. They didn't respond to it for a variety of reasons. He didn't have an obligation to assign. He was a contractor, so he didn't have an obligation to assign it to the plaintiff. I'm not sure if it's in the record, but we have actually... That's a question of ownership, not inventorship. That's correct, Your Honor, but in addition... We're just speculating about why they didn't correct it, but the bottom line is they didn't seek to correct it. That is correct, Your Honor, and I'm not sure if it's in the record, but I believe that at least certain of the plaintiffs have acquired Mr. Chung's rights, no ongoing payment obligations of any kind. So it would be... Or defendants. Defendants, thank you, Your Honor. I misspoke. So if they were to correct it... All right, so what's your response to the argument that Chung really didn't add anything? I mean, he said, I didn't invent this. What he said is he didn't invent double staters. What he did also say is, if we go back, it's undisputed what happened here. They had a one-sided version they were using for circulating baggage. It was overheating. They didn't know what to do. Mr. Chung said, in this setting of the claim, put in the double-sided staters. So no, he didn't invent double-sided staters. He put it in to this setting, and it's not disputed. Inventor stays the only living inventor left. Confirmed all of this.  Chung said do this. We're like, you're crazy. I'm paraphrasing. That's not actually what... Although I think crazy might be one of the words that was used. And nobody believed him. And he did the test and showed it would work, and that led to the two-sided staters. And yes, it's correct that they're old. Yes, it's correct. There is no invention here, actually. We think it's obvious, as the judge found for Claim 3. But to the extent that there is an invention here... If it's obvious, then how could he be an inventor? He should be... You know, it's interesting. I've never seen a circumstance... Well, I suppose Claim 1 is presumed valid. We haven't attacked it. I would suggest it probably is obvious. It's not a determination. If it's obvious, how could he be an inventor? The only way he's not an inventor is if there is no patent. And there is one. It's been asserted. And if it's a holding in the alternative order, like I said, I don't think it needs to be reshifted. I've never seen a determination that a particular claim was unpatentable. Certainly, if all you're doing is what Hess did. In Hess, they had the whole invention. They said, what material can we use for this particular thing? And this is what it needs to be like. And the salesman said, oh, I've got a material like that. This is different. They said, we've got this problem. It's overheating. What do we do? And he said, what's in the claims? Two-sided staters. Which, by the way, leads to the two-sided magnets anyway. There was testimony about inventorship from the defendant's expert on inventorship. There was none from the plaintiff's expert. It's not that they didn't have an expert. It's that he did not opine on a number of things, including inventorship, indefiniteness, and the obviousness theories that caused the district court to grant some re-judgment. So what we have here is attorney argument, to be sure. But that's all we have from the plaintiff's side, including for inventorship. I mean, Stays doesn't actually say Chung didn't contribute anything. He shouldn't be inventor. And Stays is, in fact, a paid consultant for the plaintiffs. Should I move on to on-sale bar? Your Honors. Yes. For on-sale bar, an offer for sale is also a question of law with potentially underlying facts. And interestingly enough, we have lots of stuff that shows, well, first of all, I want to be clear. This was reduced to practice before the offer for sale, like nine months before the critical date and three months before the offer for sale. It was actually, it's not contested. It's in the materials here. So there's no experimental use exception. There's no, you know, we don't know if it works kind of thing. The invention was reduced to practice. What was offered for sale? An idea or something within, defined by Claim 3 with all of its claim limitations? It was a specific system to be installed at the City of Denver, meeting all of the claim limitations, including specific reference to the double-sided breaks of Claim 3. Was it ready for patenting? Yes, it had been reduced to practice, which by definition would mean it's ready for patenting. And that has been conceded. And we also have expert testimony from Professor Kirtley on this particular issue, not rebutted by plaintiffs. And you hear me keep saying that. There were things that were rebutted by their expert, and we didn't move for summary judgment by and large on those. We picked the ones where they had presented no evidence at all. And here, interestingly enough, this is the plaintiff. Which is the sale you're relying on, the one to the City of Denver or the one to United? It's City of Denver, and I think it might be United at the City of Denver. And then there's a later offer for sale that we're not relying on. We had argued it in the court-founded fact question as to the timing of it. But City of Denver, there's no question that before the critical date, they had not only entered into a contract to answer your question, to build something, they had spent $246,000. It was a development contract, we're told. And the development cost was just a minor percentage, one or two percent. And it appears that it was not, in fact, finally perfected. So how are we to know at what stage the problems were solved, such that it's appropriate to enter into the patent system? No, the contract was to install a system which required that they do some design work. That's not uncommon. But what does that have to do with it? Actually nothing, because they were commercializing the invention. They had the double-sided brakes. They showed them to their client. The client said, okay, we want that. It actually called for the double-sided brakes. Yes, it was a hoursly basis, but it wasn't a million hours of design work. It included manufacturing and installation. The actual documents that are cited in here talk about mechanical installation being done in advance. That's not design work alone. So yes, of course, any time you're delivering a product, there may be some additional things that need to be done. The question is, is it a part of the claimed invention? The answer here is, indisputably, it called for the double-sided magnetic brakes, which they had actually... Assuming it works, apparently it didn't. That doesn't mean that it couldn't be made to work, and it also doesn't mean it wasn't an offer for sale. If it had to be made to work, how could it be reduced to practice? If the answer is that the patent's not enabled, that would be a different ground for invalidity, and there's surely nothing in this patent that lets you build something over at the city of Denver that doesn't allow you to build the prototype that had actually been built. But here, again, there had been a reduction to practice. They offered it for sale. It may be that they offered it in a way that was more difficult, but it had been reduced to practice, and it was offered for sale. If they made a commercial offer for sale that were truly a commercial offer for sale to build it on the moon, yeah, they probably can't do that, but it was still a commercial offer for sale of something that was ready for patenting. We know it was ready for patenting because we agreed it has been reduced to practice. There's actually a video, time-stamped video of it. It didn't work adequately to satisfy these customers who were paying for development. That may be, but it had still been reduced to practice, and it had still been offered for sale. I just want to make sure I've got this right because I'm looking at Appendix 11114, the magistrate judge's report and recommendation, and the magistrate judge concludes that there was an offer for sale as it relates to United prior to the critical date, but then it says the court is not convinced, however, the defendants have established that a commercial offer for sale of the claim system was made to Denver prior to the... I'm sorry. I may have switched that in my mind, Your Honor. Okay. But the materials that I'm referring to about manufacturing installation are referring to that. Okay. The question is to the procedure, which I didn't notice. So there are a lot of motions for summary judgment. Did you also include infringement? Was there infringement in those motions? Yes, Your Honor, there is. What happened to that? So two pieces on that. So there's a motion to exclude the expert testimony, and what happened with the expert testimony is they put in something that said here's a claim chart, and they cited specifications for the entire roller coaster and entire deposition transcripts as showing a limitation. So if we find there was no abuse of discretion in excluding that expert report, then is there a need for a limitation by limitation analysis? I don't think so, Your Honor. They have no proof of infringement, and we've never actually either by interrogatory or expert report seen what their theory is for infringement. So this is the summary judgment phase, not the trial phase. Yes, correct. And the judge struck their expert report, and there's no evidence left. There's no way to actually present this to a jury. Is it because they didn't proper any alternative evidence of infringement, or are you arguing that under DOE you have to have an expert? It would be both of those. There was no coherent theory offered, which is why the expert report was struck. It was completely conclusory. And in the absence of that, I mean, how could you, for the DOE, it's switching fins with magnets whether they're on the cars or rails, but that changes everything. It changes the physical forces. It changes how you get electricity to the things that drive the stators. It changes everything. But you wouldn't know that because they presented no evidence one way or another on it. With respect to the 125. Is this only an equivalence claim? For the 125, that is correct. There's another patent in suit, the 237. The only ground for summary judgment was non-infringement. That patent says that you have, let me just make sure I say it right. Oh, one last thing on the exclusion. Defendant argues Rule 702. I think they're wrong. But Federal Rule 26A2BI requires a complete statement of opinion and the basis for it, and that's an alternative ground I don't even think is addressed in the briefing. For the 237, again, without handling, I think it's over, even if handling were considered and even accepting if we had a burden to show non-infringement, what the patent is about is adjusting these magnets as a function of the velocity of a fin passing through them. As the fin goes through it, there's a braking force which causes a force on these. So they have linkages that either raise them up, create a bigger overlap and a bigger braking force, or they don't and you have less overlap. Or they bring them in. If the fin comes through, it brings them in by pulling them on these linkages. It's undisputed that there is no such thing in the accused rides. The way the rides work is it looks at the velocity upstream on the roller coaster and they say either brake and they brake or don't brake and they don't brake. And that's it. There's no adjusting any amount of braking as a result of this going through. So that means two limitations aren't met. One is it doesn't adjust the velocity as the fin passes between the right because it doesn't have any idea what it is. It's either on or off by the time it gets there. And the second is there are no linkages enabling movement of the fin there, the fin there passed to change the space relationship. So the linkages, they're up or they're down and they do not enable movement this way or this way as a result of the fin going through it. It's only as a result of what happened upstream. But all this stuff, the only thing that they said in a conclusory fashion in the expert report as in the briefing is it's affected as the fin shall pass through the array but not ever opined as it actually does pass through the array. Okay, thank you. Thank you. Mr. Austin, we've run out of time. Very briefly, Your Honor. There is no evidence in the record on the 237 patent of some imaginary sensor upstream. The defendant's belief relies on their expert report. You go read the expert report. He says there's brake sensors upstream. He doesn't cite a drawing. He doesn't cite a manual. He doesn't cite a standard print. Yeah, but you didn't seek to exclude that report. Your expert report got excluded. And if we find that there was no abuse of discretion in that, you with the burden of proof don't have any evidence, do you? We do. Here's why. The defendants argue first. They don't say where the sensor is. If there is a sensor, logically it would be near the brake. Whose burden is it? On infringement, it's us by a preponderance. And the defendants argue, and this is why it's a horse race. The defendants say, well, the plaintiffs are wrong on the relationship between the sensor and the brake because between the sensor and the brake the car could speed up or slow down. Suppose a car is going fast enough at a sensor, cause the sensor to say operate the brake, and then the car slows down between the sensor and the brake. When it gets to the brake, it's going to be going too slow. Let's assume the opposite. I still don't understand. Where are you getting that? You have the burden of proof. You have zero evidence. You have no expert. It has been excluded. So other than cross-examination of their experts, you don't have anything. Exactly. Exactly. Cross-examination. What affirmative proof do you have? We cross-examine their expert and say, Dr. Kirtley, where's the sensor? What's the drawing that you're relying upon? Well, they don't even have to put their expert on if they don't want to. How are you going to go to trial? We can call him. We can also call their witnesses. There's not a shred of evidence from any of their witnesses. There's not a single person cited who can point to a sensor. There's not a single document that the defendants produced that shows a sensor. There's a body of evidence that we can rely upon that shows the complete absence of the device. What body of evidence can you rely upon to prove infringement if you have no expert report? If we have no expert report, then we rely on calling the defendant's expert, we rely on the defendant's brake manuals, and we rely on the defendant's documents describing their rides, none of which are cited as showing a sensor. Our expert should not have been excluded because the judge decided whether he was right or wrong, not whether he met the admissibility standard. No, that expert report was a joke. I disagree. It violated every rule of civil procedure. I disagree. There can't possibly be an abuse of discretion. I'm sorry, Your Honor. I respectfully disagree. My time is almost out. The between argument. The defendants say the claim is ambiguous, and that's the problem. That's why the error results in an uncorrectable claim because of the meaning of between. They say it could be between the wheels or between the rails, and that leads to two alternative constructions of the claim. They say between is limited to the region between the rails, not above and not below. Administrative Judge Stein rejected that argument. Between means anywhere in the region between the wheels and the tubular rails. Ergo, there's no ambiguity on the present record. We don't have an error on the present record. Mr. Say's being paid is a false argument. Mr. Chung was paid $15,000 and still says, I don't claim. I'm an inventor of that. The doctrine of equivalence, the only thing I'd like to point to is the thing that we have is their own brake manual from their own brake manufacturer. That electricity has nothing to do with it. There's no electrical circuits. That manual says you can reverse the position of the magnet assemblies and the fins. You can put the fin on the car or between the rails. You can put the magnets on the car or between the rails. The function where you resolve is exactly the same. Thank you. I'll stop there. Thank you very much. We appreciate it. Thank you. Thank you, Mr. Hastaday. Mr. Lowry, the case is taken under submission.